IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLARENCE WATKINS | * | |
|     Plaintiff | | |
| | * | |
| vs. | | Civil No. L-04-2924 |
| | * | |
| ANNE ARUNDEL COUNTY | | |
| PUBLIC SCHOOLS | * | |
|     Defendant | | |
| | ****** | |

**MEMORANDUM**

This is a Title VII case. Plaintiff Clarence Watkins, an African-American male, alleges that the Board of Education of Anne Arundel County (the BOE) discriminated against him because of his race. Pending is the BOE's Motion for Summary Judgment. (Docket No. 23). For the following reasons, the Court will, by separate Order, GRANT the Motion.

**I.    Introduction**

In August 2001, Watkins was hired as a teacher's assistant at Bates Middle School. On March 21, 2001, Kim Blair, a Bates custodian, submitted a complaint that Watkins made unwanted sexual advances toward her. Blair claimed that Watkins offered her gifts, asked her to dinner, commented on her appearance and smell, and stated that he was attracted to her. Watkins's behavior made Blair uncomfortable and reluctant to come to work.

Upon receiving Blair's complaint, the BOE conducted an investigation, including an interview of Watkins. During the interview, Watkins was "evasive and unresponsive." (Black Dep., Ex. A). Accordingly, the BOE concluded that Watkins had made inappropriate advances toward Blair and decided to issue him a written reprimand.

Before the reprimand was issued, the BOE scheduled a meeting between Watkins, the

Acting Superintendent, and the Supervisor of Investigations. The purpose of the meeting was to inform Watkins of the BOE's decision and to afford him a second opportunity to state his version of the facts. The meeting was planned for May 22, 2002. On May 18, 2002, four days before the meeting, Watkins telephoned Blair and asked her to write a new statement. Blair told the BOE about Watkins's telephone call, and the BOE concluded that the appropriate disciplinary response was to fire Watkins.

Between 1997 and 2002, the BOE had investigated eleven other employees for sexual harassment. Of those employees, six were white and four were African American. The race of the eleventh employee is unknown. All of the employees received either a warning, a written reprimand, or a counseling session. Until Watkins's termination, no employee had been fired.

On September 10, 2004, Watkins filed the instant complaint under 42 U.S.C. § 1983. He alleges that the BOE discriminated against him on the basis of his race because his punishment was more severe than the punishment afforded to white employees. Watkins fails to establish a prima case of employment discrimination because he was not similarly situated to the other employees. Watkins is the only employee who approached a victim and asked her to change her story. Moreover, the Court cannot infer purposeful discrimination based on Watkins's race because the other African American employees received less severe punishments than Watkins. Accordingly, the Court will grant summary judgment in favor of the BOE.

## II.  Background

The BOE hired Watkins as a teacher's assistant in 1997 and transferred him to Bates Middle School in August 2001. (Watkins Dep., 13; Watkins's Opp. Memo., Ex. I). On March 21, 2002, Allen Delaney, Assistant Principal at Bates Middle School, reported to the BOE that

Watkins made unwelcome advances toward a Bates custodian, Kim Blair.  (Black Dep., p 7-8).

Blair provided a signed statement documenting her allegations.  (Blair Dep., Ex. 1).  She alleged that Watkins offered her gifts, stated that he was attracted to her, commented on her hair and smell, and asked her out to dinner.  (Blair Dep., Ex. 1).  Blair indicated that the advances made her "really uncomfortable," and she stated, "I just wish I could totally avoid him when I come to work but that's impossible."  (Id.).  Peyton Easton, another teacher's assistant, also provided a signed statement.  Easton stated that he witnessed Watkins's advances and discussed the situation with Blair.  (Easton Dep., Ex. A).

The BOE conducted an investigation of Blair's allegations.  (Black Dep., 4).  On April 11, 2002, Mark Black, the Supervisor of Investigations, interviewed Watkins.  (Black Dep., 25).  During the interview, Watkins denied the allegations, but Black found Watkins to be "evasive and unresponsive."  (Black Dep., Ex. A).  In a written report, Black concluded that Watkins did make unwanted advances toward Blair.  (Black Dep., Ex. A).  At the BOE's weekly case management committee meeting,[1] the committee decided to issue Watkins a written reprimand.  (Lombardo Dep., Ex. 1).

Before the BOE issued the reprimand, it scheduled a meeting between the Acting Superintendent, the Supervisor of Investigations, and Watkins.  The meeting was set for May 22, 2002.  The purpose of the meeting was to notify Watkins of the BOE's decision and to give him an opportunity to present his version of the facts.  On May 18, 2002, four days before the meeting, Watkins telephoned Blair and asked her to write a new statement.  (Blair Dep., 39).

---

[1] The committee included two Associate Superintendents, the Director of Human Resources, the attorney for the BOE, and the Supervisor of Investigations.  (Lombardo Dep., 10-11).

3

Blair interpreted Watkins's telephone call as a request for her to change her story. (Blair Dep., 39-40). Upon hearing that Watkins asked Blair to change her story, the BOE decided to terminate Watkins. (Lombardo Dep., 22-23). On May 28, 2002, the BOE sent a letter to Watkins explaining its decision.

From 1997 through 2002, the BOE conducted eleven other sexual harassment investigations. (Def. Mot. Summ. Judgement, Ex. 9). Of those employees investigated, four were African American and six were white (the race of the eleventh employee is unknown). (Id.). All of the eleven other employees either received a warning, a reprimand, or a counseling session. (Id.). No other employee was fired. (Id.).

**III.     Standard**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.[3]

The Court must apply the above standard to the record created by the parties in this case. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to

---

[2] Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).

[3] Pulliam Inv. Co. v. Cameo Prop., 810 F.2d 1282, 1286 (4th Cir. 1987).

the jury or whether it is so one-sided that one party must prevail as a matter of law."[4]  "[T]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[5]

**IV.    Analysis**

At the summary judgment stage, an employment discrimination claim must be analyzed under the familiar McDonnell Douglas burden-shifting framework.[6]  The plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination.[7]  Once the plaintiff has met this burden, the defendant must articulate a legitimate reason for the adverse employment action.[8]  If the defendant offers such a reason, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext" for discrimination.[9]  Although the burden of production shifts, the plaintiff retains the burden of persuasion throughout all the stages of

---

[4] Weinberger v. Bristol-Myers Co., 652 F. Supp. 187, 189 (D. Md. 1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-53 (1986)).

[5] Anderson, 477 U.S. at 252.

[6] See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  For a discussion of the purposes behind the McDonnell Douglas framework, see Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995).

[7] Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997).

[8] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

[9] Id. at 143 (internal quotations omitted).

5

proof.[10]

Watkins has neither established a prima facie case of discrimination, nor shown that the BOE's stated reasons for his termination were pretextual. Accordingly, the BOE is entitled to summary judgment.

A. Watkins Does Not Establish a Prima Facie Case of Discrimination

To sustain a claim of discrimination at the summary judgment stage, a plaintiff must establish a prima facie case by showing: (i) that he is a member of a protected class; (ii) that the defendant took some adverse employment action; and (iii) in taking that action the defendant treated plaintiff differently than similarly situated persons outside the protected class.[11]

Watkins has failed to establish a prima facie case of discrimination because he was not treated differently than similarly situated individuals. Of all the employees investigated for sexual harassment, Watkins was the only one who contacted the victim and asked her to change her story. If he had not contacted Blair, he would have received a written reprimand, a punishment in line with that of the other employees. Moreover, even if Watkins was similarly situated to the other employees, the Court cannot infer a discriminatory intent because the other African American employees received a less severe punishment than Watkins.[12]

Even assuming *arguendo* that Watkins could establish a prima facie case, his claim still

---

[10] See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).

[11] See McDonnell Douglas, 411 U.S. at 802.

[12] See Booth v. Maryland, 327 F.3d 377, 383 (4th Cir. 2003) ("The district court ruled that it was 'not possible to infer that any disparate discipline against Booth was motivated by racial discrimination' because Booth's evidence demonstrated that 'both white and African-American employees were treated differently than Booth' in this regard. We agree.") (internal citations omitted).

fails because he has not presented sufficient evidence to discredit the BOE's nondiscriminatory reasons for his termination.

      B.    <u>Watkins Does Not Establish that the BOE's Reasons for Terminating him are Pretextual</u>.

Drawing all inferences in favor of Watkins, the Court must assess the record to determine if it fairly suggests that the proffered reasons for Watkins's termination are false.[13] In its summary judgment motion, the BOE asserts that Wakins was fired because he contacted Blair and asked her to change her story. Watkins argues that this is merely pretext because he did not sexually harass Blair or ask her to change her story.

Watkins's argument fails for several reasons. First, the BOE appears to have had enough information to reasonably conclude that Watkins did make unwanted advances toward Blair and encouraged her to change her story. Moreover, even if the Board's decision to terminate Watkins was mistaken, Watkins has not provided any evidence that the BOE intentionally discriminated against him because of his race. The "Plaintiff must demonstrate that the proffered reason is 'a lie, not merely a mistake.'"[14]

Watkins has neither established a prima facie case of discrimination, nor shown that the BOE's stated reasons for the termination were pretextual. Accordingly, the BOE is entitled to summary judgment.

---

[13]    See <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147-49 (2000).

[14]    <u>Oguezuonu v. Genesis Health Ventures, Inc.</u>, 415 F. Supp. 2d 577, 586 (D. Md. 2005) (citing <u>Price v. Thompson</u>, 380 F.3d 209, 214 n.1 (4th Cir. 2004) ("[M]ere mistakes of fact are not evidence of unlawful discrimination.")); <u>Clark v. Creative Hairdressers, Inc.</u>, Civ. No. 05-103, 2005 WL 3008511, *11 (D. Md. 2005) ("Ms. Clark does not present any evidence that Defendants' proffered reason was anything more than a mistake of fact ... or that the real reason for the overcharge was because of her race.").

**V.     Conclusion**

Accordingly, the Court will, by separate Order, GRANT the BOE's Motion for Summary Judgment and DIRECT the Clerk to CLOSE the case.

Dated this 18th day of July, 2006.

                                                         _____/s/_____
                                                         Benson Everett Legg
                                                         Chief Judge